## LOUISVILLE & NASHVILLE RAILROAD CO. *v.* OGLES.

1. Where a ground of a motion for a new trial, complaining of the admission of testimony, is not certified to be true, but it is certified as true when all the facts stated in that ground are "taken in connection with all of the other testimony of the witness as set out in the brief," it will not be considered by this court; as a ground of a motion for a new trial must be complete within itself, and this court will not undertake to go through the record to ascertain what other evidence must be taken in connection with that set out in the ground of the motion, in order that the court may ascertain whether the evidence objected to should have been admitted or excluded.

2. There is no evidence in the record authorizing the charge upon the subject of the plaintiff's being forcibly ejected from the train upon which she was a passenger.

3. While not entirely accurate, the charge upon the subject of nominal damages was substantially correct.

4. The portions of the charge excepted to in the motion for a new trial which are not dealt with in the foregoing are not erroneous for any of the reasons assigned.

OCTOBER 19, 1916.

Action for damages. Before Judge Patterson. Cherokee superior court. September 25, 1915.

Mrs. Mary Ogles brought suit against the Louisville & Nashville Railroad Company to recover $1600 as damages for personal in-

juries. She alleged that she boarded a train of the defendant company at Canton, Ga., a station on the defendant's line of railway, having purchased a ticket from that point to another station, Univeter, three miles distant. Plaintiff became a passenger at Canton at about 3 o'clock, p. m. The ticket was taken up by the conductor before reaching her intended destination, but the train did not stop at Univeter, running past that point about a mile and a half; and there, it is alleged, the plaintiff, with her children, was put off in the woods. She complains that the defendant was negligent in the following particulars: that its employees failed to stop the train at Univeter; that, being a woman in delicate health, she was put off in a rain, and as a result of getting wet she contracted a severe cold, and this caused her much suffering and pain, and the cold developed into a permanent illness, affecting her lungs, and resulting in other injuries. The jury upon the trial returned a verdict in favor of the plaintiff for $1250.00. The defendant made a motion for a new trial, which the court overruled.

*D. W. Blair, Tye, Peeples & Tye,* and *E. W. Coleman,* for plaintiff in error.

*Howell Brooke, N. A. Morris,* and *George D. Anderson,* contra.

BECK, J. (After stating the foregoing facts.)

1. Where a ground of a motion for a new trial complaining of the admission of testimony is not certified to be true, but it is certified as being true when all the facts stated in that ground are "taken in connection with all of the other testimony of the witness as set out in the brief," it will not be considered by this court; as a ground of a motion for a new trial must be complete within itself, and this court will not undertake to go through the record to ascertain what other evidence must be taken in connection with that set out in the ground of the motion, in order that the court may ascertain whether the evidence objected to should have been admitted or excluded. The practice of making such a certificate has been criticised in more than one opinion rendered by this court. If the recital of fact in a ground of a motion is true, the court should certify it without qualification; if it is not true, counsel should be required to make correction in accordance with the truth, or the court should refuse to certify altogether. *Landrum* v. *Landrum,* 145 *Ga.* 307 (89 S. E. 201).

2. Complaint is made of the following charge of the court: "If you should believe from the evidence (there is an allegation here, now, that she was put off in an unusual and inconvenient place, and that there was a rainstorm, and she was drenched, and that brought about her sickness and other injuries) —if you should believe from the evidence that the plaintiff caused the defendant's train to stop at an unusual or inconvenient place, and the defendant company had carried her beyond the place of her destination, that is, the place to which they had sold her a ticket, the railroad company would be liable to her for nominal damages only; and if she stopped the train, and the leaving of the train was her voluntary act, the company would not be responsible for anything that occurred to her after she left the train, either from the rainstorm, or from the walk, or sickness, or otherwise, or fright; but I charge you that a passenger need not wait to be forcibly put off of a train. If a passenger is ordered by the conductor to get off, the order seeming to be peremptory, and the passenger so understanding it, why the passenger may yield to the conductor's authority and leave the train; but to make the railroad company liable in such cases, the passenger must act contrary to his or her own will, and in obedience to the conductor's command." And complaint is especially made of that part of the charge instructing the jury as to what would constitute a forcible ejection of a passenger from the train. In view of the ruling of the court touching substantially the same question when the case was here before, this charge was error. In the former decision in this case (*L. & N. Railroad Co.* v. *Ogles,* 142 *Ga.* 720, 83 S. E. 681) it was said: "The charge of the court, instructing the jury as to the damages recoverable by the plaintiff as compensation for the injury inflicted upon her 'by being put off and ejecting her from the train at an unsuitable place,' was erroneous under the evidence contained in the record. There was no evidence to authorize an instruction as to damages resulting to the plaintiff from being 'ejected' from the train. From the plaintiff's own testimony it clearly appears that she herself, discovering that she was being carried beyond her station, rang the bell which gave the signal for the train to be brought to a stop; that she voluntarily, in pursuance of her purpose to have the train brought to a stop, went to the door of the coach, and of her own will left the train. The

word 'ejected,' in the connection in which it is used in this charge, imports the idea of being forcibly expelled or thrust from the train; and there was no evidence to authorize the court to employ any word of such import." The evidence of the plaintiff upon the subject of being compelled forcibly to leave the train is substantially the same in both records. Upon that subject she testified in the former trial that after the train passed Univeter the flagman cried out the name of the station and went out on the platform; that she then arose, taking her baggage and children, started out, and, the speed of the train increasing, she "pulled the bellcord running through the car, and the train then stopped." Immediately after the train stopped, with her children and baggage she went out on to the platform, and the conductor, who then came up, said for her to get off there and wait until they came back at night, and they would pick her up and carry her back. Plaintiff did get off, taking her children and baggage. She stated also, to quote her exact language: "As soon as it stopped, I went forward for the purpose of leaving the train. They asked me to get off. When I pulled the bell-cord the flagman had just left the car I was in, and was standing at the door. . . After I pulled the bell-cord I got up and went forward for the purpose of leaving the train, and the conductor and flagman were out on the platform when I got there." At the final trial, upon the subject of being ejected from or forcibly compelled to leave the train, the plaintiff testified: that the train did not stop at Univeter; that the conductor had taken up her ticket; that after passing Univeter she was looking around for some of the trainmen, but did not see any of them in the coach; that she then pulled the bell-cord; that when she pulled the cord the train stopped, and thereupon she went to the door of the car, and a flagman, who was standing at the door, "told me to get off there and stay until the train came back, and they would carry me back. I then got off. I obeyed their commands. I got off and taken my children off. . . As to why I pulled the bell-cord, I wanted the train to stop. As to what I said to them about taking me back to where my ticket called for, I asked them why they didn't stop at Univeter and let me off. To this they made no answer as I know of; told me to get off there. They said, 'You can get off here and we will pick you up when we come back.' I never told them anything about taking

me back to Univeter with that train. They asked me to get off, and I got off." Subsequently, upon cross-examination, the witness testified: "I pulled the bell-cord to stop the train. No, I didn't pull it to stop the train so I could get off. I didn't want to get off there. I wanted to see where they were going to take me to, or see what they were going to do. I didn't want to get off there in the woods. They asked me to get off. I did want to get off where I bought my ticket to. I think I testified on the former trial that I pulled the bell-cord to get them to stop the train so I could get off, and as soon as it stopped I went out of the front door of the car I was in. Yes, I stopped the train to get off of the train. I wanted to get off, but not there in the woods. I wanted to get off where I was going to. I might have testified on the former trial that as soon as it stopped I went forward for the purpose of leaving the train. I didn't know for certain. Yes, I knew the train was in the woods; but, like I say, I didn't want to get off in the woods. I wanted to get off where I bought my ticket to go to. I knew I was not at Univeter at that time. I might have testified before, that after I pulled the bell-cord I got up and went forward for the purpose of leaving the train, and the conductor and flagman were out on the platform when I got there. I don't just remember everything I did testify. It is just like I told you it was. As to whether it is true that I pulled the bell-cord and got up and went forward for the purpose of leaving the train, I didn't want to leave the train and get off there in the woods. The reason I took the children with me forward, out on the platform of the car, I said I done it to see where they was going to take me to, and see if I could see the conductor or flagman, to see where they were taking me—what was the reason they didn't stop where I bought my ticket to. The only thing I asked him was, 'Why didn't you stop and let me off at Univeter?' That is the only thing I asked the conductor. I asked him that. I don't remember whether I testified before dinner that that was all I said to him or not. That is what I did say to him. I don't remember anything else I said to him. The flagman says, 'You get off here.' Q. You said before dinner, didn't you, that the conductor said to you, 'You can get off here, and the train this afternoon will pick you up and take you back?' A. I know it was one of the trainmen. I don't know hardly apart—whether

it was the conductor or flagman. He says, 'You get off here.' He didn't say 'You can.' Q. Didn't you testify before dinner that he said, 'You can get off here and the train will pick you up this afternoon and take you back?' A. He says, 'You get off here.' I might have testified this morning that he said, 'You can get off here, and we will pick you up as we come back this afternoon.' I won't say. I don't want to tell a lie. I won't swear that I didn't say it. Yes, I knew there was a train that came up in the afternoon; there was one came back at six o'clock that night. It was about four o'clock when I got off of the train down there. In about two hours there would have been a train along, coming back past Univeter, and coming on back to Canton. Yes, the train came to a stop when I pulled the bell-cord. Q. Isn't it true that you pulled the bell-cord and got up and went forward for the purpose of leaving the train? A. No, I didn't want to leave the train and get off there in the woods. Yes, I pulled the bell-cord to stop the train; that is, I gave the signal by the pulling of the cord that would bring the train to a stop. I knowed it would stop it if I pulled it. As to how long it was after he called Univeter before I pulled the bell-cord, he come through the train and hollered it, and went right straight on, and the train slowed up, and then I got up and then started out of the train, and it speeded up, and went to running fast; and then I pulled the cord. Yes, I remember testifying on the former trial that 'He had gone out of the car when I pulled the cord.'"

This comparison of the testimony given by the plaintiff upon the first and second trials, so far as relates to the subject of her being forcibly compelled to leave the train, shows that the testimony relative to that question was substantially the same on the two trials. If the testimony at the first trial did not authorize a charge upon the subject of the ejection of a passenger, then the testimony at the last trial did not. We are of the opinion that the ruling in the case when it was here before is clearly correct. The witness shows by her own evidence that she pulled the bell-cord, knowing that this act of hers would result in the train being brought to a stop, and she went forward to the platform with her children and her baggage. Having of her own motion brought the train to a stop, and having given every other indication of a desire then and there to leave the train, there was no impropriety in the conductor or flagman saying to her when she reached the

platform, "Get off here," or "You can get off here," and the use of such an expression did not show an intention to forcibly eject her nor amount to even a suggestion of force. There is no hint in the evidence that the tone of the railway employee who told the plaintiff to get off where the train stopped was either harsh or peremptory. For these reasons, we are satisfied that the ruling upon this question in the former decision was a correct one; but whether correct or not, it is controlling in this case, under the evidence relating to the subject under consideration.

This error in the charge affected several other portions of the charge complained of in the motion.

3. While not entirely accurate, the charge upon the subject of nominal damages was substantially correct.

4. The portions of the charge excepted to in the motion for a new trial which are not dealt with in the foregoing are not erroneous for any of the reasons assigned.

*Judgment reversed. All the Justices concur.*